**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| **IN RE: DRT LLC DATA SECURITY LITIGATION** | No. 1:25−cv−00013-RGE-HCA<br><br>Hon. Magistrate Judge Helen C. Adams |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Tyler Watts, Terry Clark, and Mark Moore (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through their undersigned counsel, file this Consolidated Class Action Complaint against Defendant DRT LLC ("DRT") and Defendant 10 Roads Express, LLC ("10 Roads") (together, "Defendants") and allege the following based on personal knowledge of facts, upon information and belief, and based on the investigation of their counsel as to all other matters.

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this class action lawsuit against Defendants for their failure to protect and safeguard Plaintiffs' and the Class's highly sensitive personally identifiable information ("PII"). As a result of Defendants' negligence and insufficient data security, cybercriminals easily infiltrated DRT's inadequately protected email accounts on or around May 29, 2025 and accessed the PII of Plaintiffs and the Class—approximately **14,470**

**individuals** (the "Data Breach" or "Breach").[1] Now, Plaintiffs' and the Class's PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives.

2.      According to DRT's website, "DRT LLC is a shared services organization that contracts with entities to provide support services in areas including Real Estate, Risk Management, Legal, Information Technology, Contracting, Human Resources and Finance."[2]

3.      Through these business relationships, DRT acquires the highly sensitive PII of Plaintiffs and the Class.

4.      10 Roads utilized DRT's services.

5.      Plaintiffs and the Class are current and/or former customers and employees of entities that utilized DRT's services, such as 10 Roads.[3]

6.      Businesses that handle consumers' PII, like DRT, owe the individuals to whom the information relates a duty to adopt reasonable measures to protect it from disclosure and theft by unauthorized third parties, and to keep it safe and confidential. This duty arises under contract, statutory, and common law, industry standards, representations made to Plaintiffs and Class Members, and because it is foreseeable that hackers with nefarious intentions will target the PII and use it to harm the affected individuals.

---

[1]      *See*      https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d0b33c1b-1d09-478b-b237-d99b999b9926.html; Exhibit 1 (Sample Notice Letter DRT sent to victims of the data breach).
[2] https://drtshared.com/.
[3] *See* Ex. 1.

7.     Similarly, businesses that collect consumers' PII—such as 10 Roads—and provide this information to vendors and/or independent contractors like DRT—owe the individuals to whom the information relates a duty to ensure that the vendor and/or independent contractor utilizes and adopts reasonable measures to protect the PII from disclosure and theft and to keep it safe and confidential. This duty arises under contract, statutory, and common law, industry standards, representations made to Plaintiffs and Class Members, and because it is foreseeable that hackers with nefarious intentions will target the PII and use it to harm the affected individuals.

8.     Despite the foregoing, Defendants failed to protect Plaintiffs' and the Class's PII, resulting in a sizable and preventable data breach.

9.     On May 29, 2025, DRT identified unauthorized remote access to several DRT owned email accounts.[4]

10.     "On June 11, 2025 DRT discovered emails containing PII which may have been **accessed or acquired**."[5]

11.     DRT claims "the investigation could not determine whether any information was acquired" but confirmed it was "possible that there was unauthorized access to PII in files in these email accounts," including, "spreadsheet[s] or documents used for internal business purposes."[6]

12.     The types of PII accessed and/or acquired in the Data Breach included highly

---

[4] *Id.*
[5] *Id.*(emphasis added).
[6] *Id.*

sensitive information such as: (i) names; (ii) demographic information (such as address, city, state, and zip code); and (iii) Social Security numbers (collectively, "Private Information").[7]

13.    Despite discovering the Breach in or around May 2025, Defendants delayed alerting victims of the Data Breach until in or around July 2025, when they began sending out notice of data breach letters ("Notice Letters") to victims of the Data Breach.[8]

14.    The Data Breach, which DRT failed to detect until cybercriminals had already accessed and stolen Plaintiffs' and Class Members' Private Information, is the direct result of DRT's failure to implement basic data security measures or oversight over consumers' data in its custody and control. Had DRT implemented reasonable cybersecurity measures—including adequate safeguards for initial access, encryption, or redaction of personal data elements, and sufficient logging, monitoring, and alerting tools to detect unauthorized activity—cybercriminals would not have been able to hack into DRT's emails accounts and then exfiltrate that data before being detected.

15.    Furthermore, had 10 Roads ensured DRT implemented reasonable cybersecurity measures *prior* to utilizing DRT's services—including adequate safeguards for initial access, encryption or redaction of personal data elements, and sufficient logging, monitoring, and alerting tools to detect unauthorized activity—Plaintiffs and Class Members would not have suffered the harm alleged herein.

_____

[7] *Id.*
[8] *Id.*

16.     DRT failed to adequately protect Plaintiffs' and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive data when it was maintained on DRT's email accounts without adequate safeguards against unauthorized access and exfiltration. This unencrypted, unredacted Private Information was compromised due to DRT's negligent acts and omissions and utter failure to protect it.

17.     Similarly, 10 Roads failed to adequately protect Plaintiffs' and Class Members' Private Information by failing to ensure the vendors and/or independent contractors it utilized, such as DRT, implemented industry standard data security procedures, practices, and protocols to protect Plaintiffs' and Class Members Private Information from hackers.

18.     DRT breached its duties and obligations by: (i) failing to design, implement, monitor, and maintain reasonable data security safeguards against foreseeable threats; (ii) failing to design, implement, and maintain reasonable data retention policies; (iii) failing to adequately train or oversee its employees regarding data security; (iv) failing to comply with industry standard data security practices; (v) failing to disclose to Plaintiffs and Class Members its inadequate data security practices; (vi) failing to encrypt or adequately encrypt the Private Information that was stored on DRT's email accounts and servers; (vii) failing to recognize or detect that its email accounts and/or network systems repository had been compromised and accessed in a timely manner to mitigate the harm; (ix) failing to utilize widely available software and other programs able to detect and prevent this type of attack; and (x) failing to otherwise adequately secure Plaintiffs' and Class Members' Private

Information using reasonable and effective data security procedures free of foreseeable vulnerabilities.

19.    10 Roads breached its duties and obligations by: (i) failing to ensure DRT designed, implemented, monitored, and maintained reasonable network safeguards against foreseeable threats; (ii) failing to ensure DRT designed, implemented, and maintained reasonable data retention policies; (iii) failing to ensure DRT adequately trained or oversaw its employees regarding data security; (iv) failing to ensure DRT complied with industry standard data security practices; (v) failing to warn Plaintiffs and Class Members of DRT's inadequate data security practices; (vi) failing to ensure DRT encrypted or adequately encrypted the Private Information that was stored on DRT's network server; (vii) failing to ensure DRT had systems or processes in place to recognize or detect that DRT's network had been compromised and accessed; (viii) failing to ensure DRT utilized widely available software able to detect and prevent this type of attack; and (ix) failing to ensure DRT otherwise adequately secured the Private Information of Plaintiffs and the Class using reasonable and effective data security procedures free of foreseeable vulnerabilities.

20.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality and security of their Private Information. In providing their Private Information to Defendants, Plaintiffs and Class Members reasonably expected Defendants would keep their Private Information confidential and secure, use their Private Information for only legitimate business purposes, and disclose it only as authorized. Defendants failed to do so, resulting in the unauthorized disclosure of Plaintiffs' and Class Members' Private

Information in the Data Breach.

21.    Hackers targeted and obtained Plaintiffs' and Class Members' Private Information from DRT because of the Private Information's value in exploiting and stealing Plaintiffs' and Class Members' identities. As a direct and proximate result of DRT's inadequate data security and breaches of its duties to handle Private Information with reasonable care, Plaintiffs' and Class Members' Private Information was accessed and/or acquired by cybercriminals and exposed to an untold number of unauthorized individuals. The present and continuing risk to Plaintiffs and Class Members as victims of the Data Breach will remain for their respective lifetimes.

22.    The harm resulting from a data breach like this manifests in numerous ways including identity theft and financial fraud. The exposure of an individual's Private Information due to a data breach ensures that the individual will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of his or her life. Mitigating that risk, to the extent even possible, requires individuals to devote significant time and money to closely monitor their credit, financial accounts, and email accounts, and take several additional prophylactic measures. Plaintiffs and Class Members will be forced to allocate time to these tasks for years, if not their lifetimes, due to the Data Breach.

23.    Due to Defendants' negligence, cybercriminals accessed and obtained everything they need to commit identity theft and fraud and wreak havoc on the financial and personal lives of thousands of individuals.

7

24.     Now, and for the rest of their lives, Plaintiffs and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft have to spend time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiffs and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

25.     In sum, Plaintiffs and the Class will face an imminent risk of fraud and identity theft for the rest of their lives because: (i) DRT failed to protect Plaintiffs' and the Class's Private Information, allowing a large and preventable Data Breach to occur; (ii) the cybercriminals who perpetrated the Breach accessed Private Information that they will sell on the dark web (if they have not already) because that is the *modus operandi* of cybercriminals who perpetrate breaches such as this; and (iii) DRT offered credit monitoring services to Plaintiffs and the Class, an offer it need not make if no Private Information was stolen and at risk of misuse.

26.     As a result of the Data Breach, Plaintiffs and Class Members suffered concrete injuries in fact including, but not limited to: (i) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft;

(iii) actual identity theft and fraud; (iv) financial costs incurred due to actual identity theft; (v) loss of time incurred due to actual identity theft; (vi) deprivation of value of their Private Information; (vii) loss of privacy; (viii) emotional distress including anxiety and stress in with dealing with the Data Breach; and (ix) the continued risk to their sensitive Private Information, which remains in Defendants' possession and is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect the PII they collect and maintain

27.     In light of the foregoing, Plaintiffs bring this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, and injunctive and declaratory relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.     THE PARTIES

28.     Plaintiff **Tyler Watts** is an individual domiciled in Union, Kentucky.

29.     Plaintiff **Terry Clark** is an individual domiciled in Gulf Breeze, Florida.

30.     Plaintiff **Mark Moore** is an individual domiciled in Indianapolis, Indiana.

31.     Defendant **DRT LLC** is a Delaware limited liability company with members and managers located in this District. DRT is headquartered at 2200 Abbott Drive, Carter Lake, IA 51510. DRT's registered agent is Corporation Service Company, who can be served at 505 5th Ave., Ste 729, Des Moines, IA, 50309.

32.     Defendant **10 Roads Express, LLC** is a Delaware limited liability company with members and managers located in this District. DRT is headquartered at 2200 Abbott

Drive, Carter Lake, IA 51510. DRT's registered agent is Corporation Service Company, who can be served at 505 5th Ave., Ste 729, Des Moines, IA, 50309.

## III.    JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000.00 exclusive of interest and costs, there are more than one hundred (100) putative Class Members, and minimal diversity exists because many putative Class Members are citizens of a different state than Defendants, namely Plaintiffs, who are each citizens of a State diverse from each of the Defendants.

34.    This Court has personal jurisdiction over Defendants because Defendants are registered to do business in the State of Iowa; have their principal place of business in this District; conduct substantial business in this District through their headquarters, offices, and affiliates; engaged in the conduct at issue here in this District; and/or otherwise have substantial contacts with this District and purposely availed themselves to the Courts in this District.

35.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) as a substantial part of the events giving rise to the claims emanated from activities within this District. Upon information and belief, the Data Breach giving rise to this lawsuit occurred in this District.

## IV.    FACTUAL ALLEGATIONS

**A.    Defendants Collected Plaintiffs' and the Class's PII but Failed to Adequately Protect and Secure it.**

36.     "DRT LLC is a shared services organization that contracts with entities to provide support services in areas including Real Estate, Risk Management, Legal, Information Technology, Contracting, Human Resources and Finance."[9]

37.     DRT claims it provides support to companies encompassing over 6,000 employees in 49 states.[10]

38.     One of DRT's clients is 10 Roads.[11]

39.     "10 Roads Express is a full-service asset-based contract carrier that specializes in the on-time delivery of time sensitive materials."[12]

40.     It is estimated that DRT's annual revenue is over $5 million per year.[13] In other words, DRT could have afforded to implement adequate data security prior to the Breach but deliberately chose not to.

41.     In the ordinary course of business, DRT receives the Private Information from individuals, such as Plaintiffs and the Class, from the entities that utilize DRT's services. Thus, upon information and belief, DRT acquired Plaintiffs' and Class Members' Private Information through its relationship with 10 Roads and/or other entities DRT contracted to provide services to.

42.     Defendants obtain, collect, use, and derive a benefit from the Private Information of Plaintiffs and Class Members.

---

[9] https://drtshared.com/.
[10] *Id.*
[11] Ex. 1.
[12] https://10roadsexpress.com/.
[13] https://www.zoominfo.com/c/drt-llc/547150171.

43.    Defendants use the Private Information they collect to provide services, making a profit therefrom. Defendants would not be able to obtain revenue if not for the acceptance and use of Plaintiffs' and the Class's Private Information.

44.    By collecting Plaintiffs' and the Class's Private Information, Defendants assumed legal and equitable duties to Plaintiffs and the Class to protect and safeguard their Private Information from unauthorized access and intrusion.

45.    DRT recognized it had a duty to use reasonable measures to protect the Private Information of Plaintiffs and the Class but utterly failed to do so.

46.    10 Roads recognized it had a duty to use contractors and/or vendors with reasonable measures to protect the Private Information of Plaintiffs and the Class but utterly failed to do so.

47.    DRT failed to adopt reasonable and appropriate data security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiffs' and the Class's Private Information.

48.    Likewise, 10 Roads failed to ensure DRT adopted adopt reasonable and appropriate data security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiffs' and the Class's Private Information prior to utilizing DRT's services.

**B.    Defendants' Negligence Culminated in a Large and Preventable Data Breach.**

49.    As a result of Defendants' combined negligence and failure to protect Plaintiffs' and Class Members' Private Information, Plaintiffs' and Class Members'

Private Information was accessed and/or stolen from DRT's inadequately secured email accounts in a large and preventable Data Breach.

50.    On or around July 10, 2025, Defendants began sending Notice Letters that generally stated as follows:

### Notice of Data Security Incident

Dear <> <>,

**What Happened**

DRT, LLC ("DRT") <> recently experienced a cybersecurity incident that involves some of your personally identifiable information ("PII"). On May 29, 2025, an attacker accessed and DRT identified unauthorized remote access to several DRT owned email accounts. After learning of the incident, DRT immediately investigated to determine the full scope of the access. On June 11, 2025 DRT discovered emails containing PII which may have been accessed or acquired. Although the investigation could not determine whether any information was acquired, it is possible that there was unauthorized access to PII in files in these email accounts, such as a spreadsheet or documents used for internal business purposes. DRT is providing this notice so that you can take steps to protect against possible misuse of personal information.

**What Information Was Involved**

DRT manually reviewed the contents of the email accounts, to determine the type of PII potentially involved. Our investigation indicated that some of your information was in these accounts. Information that may have been accessed or acquired includes full name and demographic information (such as address, city, state, and zip), <>.

**What We Are Doing**

After learning of the incident, DRT took a number of important steps to prevent similar incidents from occurring in the future. These steps included immediately disabling the email accounts while a password reset was performed, revoking all active user logins, as well as any multi-factor authentication and monitoring the user's activity within our on-premises and

cloud-based environments. DRT is also working to implement additional technologies designed to prevent similar attacks including more extensive logging and real-time reporting as well as exploring options for further hardening authentication standards. DRT will also be providing expanded cybersecurity training for its employees. In addition, we are offering identity theft protection services through IDX, the data breach and recovery services expert. IDX identity protection services include: <> months of credit and CyberScan monitoring, a $1,000,000 insurance reimbursement policy, and fully managed ID theft recovery services. With this protection, IDX will help you resolve issues if your identity is compromised.

**What You Can Do**

We encourage you to contact IDX with any questions and to enroll in the free identity protection services by calling 1- 855-201-9120, going to https://app.idx.us/account-creation/protect, or scanning the QR image and using the Enrollment Code provided above. IDX representatives are available Monday through Friday from 9 am - 9 pm Eastern Time. Please note the deadline to enroll is October 10, 2025. We encourage you to take full advantage of this service offering. IDX representatives have been fully versed on the incident and can answer questions or concerns you may have regarding protection of your personal information.

**For More Information**

You will find detailed instructions for enrollment on the enclosed Recommended Steps document. Also, you will need to reference the enrollment code at the top of this letter when calling or enrolling online, so please do not discard this letter. Please call 1-855-201-9120 or go to https://app.idx.us/account-creation/protect for assistance or for any additional questions you may have.[14]

51.      Thus, despite discovering the Data Breach in May 2025, DRT did not begin

notifying individuals of the Data Breach until July 2025—over a month later.[15]

---

[14] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d0b33c1b-1d09-478b-b237-d99b999b9926.html.
[15] *Id.*

52.    In recognition of the severity of the Data Breach, and the imminent risk of harm Plaintiffs and the Class face, DRT made a limited offering credit monitoring and identity theft protection services.[16] Such an offering is inadequate and will not prevent identity theft but will only alert Data Breach victims once identity theft has already occurred.

53.    Omitted from the Notice Letters were: (i) the details of the root cause of the Data Breach; (ii) the identity of the perpetrator of the Data Breach; (iii) the vulnerabilities exploited; (iv) when the Data Breach began and ended; and (iv) the remedial measures undertaken to ensure such a data breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their Private Information is protected.

54.    The threat of harm has already materialized. DRT admits Cybercriminals have accessed and/or stolen Plaintiffs' and the Class's Private Information. These cybercriminals will publish Plaintiffs' and Class Members' Private Information on the dark web—if the cybercriminals have not already done so.

55.    DRT's insufficient data security for Plaintiffs' and the Class's data caused and allowed criminals to target and access and/or acquire files containing Plaintiffs' and Class Members' inadequately protected, unencrypted Private Information from DRT's email accounts, and unreasonably delayed Plaintiffs' and Class Members' notice by weeks.

---

[16] *Id.*

56.    As the Data Breach and its timeline evidence, DRT did not use reasonable data security measures appropriate to the nature of the sensitive Private Information collected from Plaintiffs and Class Members.

57.    DRT should have never maintained Plaintiffs' and Class Members' Private Information on its email accounts. Even if it did store Private Information on its email accounts—which is highly discouraged by data security professionals—DRT should have at least: (i) encrypted the Private Information; (ii) deleted the Private Information when it was no longer needed; (iii) required sufficient verification such as multi-factor authentication for email accounts storing Private Information; (iv) trained employees about cybersecurity and attempts to gain unauthorized access; (v) investigated and addressed vulnerabilities in its data security practices; and/or (vi) implemented the necessary safeguards to enable DRT to identify malicious activity and expediently curtail it when it occurred. These failures allowed and caused cybercriminals to target DRT's email accounts and carry out the Data Breach.

58.    All in all, DRT failed to take the necessary precautions required to safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized access and exploitation.

59.    Defendants' actions represent a flagrant disregard of the rights of Plaintiffs and the Class, both as to privacy and property.

**C.    10 Roads Negligently Utilized DRT's Services and Failed to Properly Vet DRT Before Using DRT's Services.**

60.    10 Roads failed to adequately protect Plaintiffs' and Class Members' Private

Information by failing to ensure the vendors and/or independent contractors it utilized, such as DRT, implemented industry standard data security procedures, practices, and protocols to protect Plaintiffs' and Class Members Private Information from hackers.

61.     10 Roads was negligent and failed to confirm when retaining DRT's services that: (i) Plaintiffs' and Class Members' Private Information would be protected from unauthorized access; (ii) DRT maintained adequate data security procedures, practices, infrastructure, and protocols; and (iii) that Plaintiffs' and the Class's Private Information would not be subject to unauthorized access and exfiltration.

62.     10 Roads owed, and continues to owe, duties of care to Plaintiffs and Class Members to: (i) exercise reasonable care to secure and protect the Private Information in its possession and the Private Information in the possession of any entity it hired to provide services—such as DRT—from unauthorized access; (ii) ensure DRT implements adequate data security practices, procedures, infrastructure, and protocols compliant with applicable law and industry standards; (iii) ensure DRT has adequate processes in place to quickly detect a data breach and to timely act on warnings regarding data breaches; (iv) investigate DRT's data security practices, infrastructure, procedures, and protocols prior to retaining DRT; and (v) monitor DRT's security procedures, practices, and protocols during the entirety of the business relationship.

63.     10 Roads utterly failed to uphold these duties, as evidenced by the Data Breach, thereby breaching its duties owed to Plaintiffs and the Class.

64.     Had 10 Roads ensured DRT implemented reasonable cybersecurity measures

17

*prior* to utilizing DRT's services—including adequate safeguards for initial access, encryption or redaction of personal data elements, and sufficient logging, monitoring, and alerting tools to detect unauthorized activity—Plaintiffs and Class Members would not have suffered the harm alleged herein

65.    As a direct and proximate cause of the 10 Roads's breaches, and failure to properly interview and vet DRT, Plaintiffs and the Class have been damaged as set forth herein.

**D.    Cybercriminals Will Use Plaintiffs' and the Class's Private Information for Illegal Purposes.**

66.    Private Information is of great value to hackers and cybercriminals, and the Private Information accessed and/or stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiffs and the Class Members and to profit off their misfortune.

67.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[17]

68.    For example, with the Private Information stolen in the Data Breach—including Social Security numbers—identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal

---

[17] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[18] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class Members.

69.    Social security numbers are particularly sensitive pieces of personal information.  As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[19]

70.    Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[20]

71.    This was a financially motivated data breach, because the only reason cybercriminals go through the trouble of running targeted cyberattacks against entities like DRT is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

---

[18] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[19] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (emphasis added).

[20] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, available at https://www.gao.gov/products/gao-07-737.

72.     Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[21]

73.     "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[22]

74.     These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, **they will use it**.[23]

75.     Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

76.     For instance, with a stolen social security number, which is part of the Private Information compromised in the Data Breach, someone can open financial accounts, get

---

[21] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web* (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[22] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[23] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

[24] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown,* GAO (July 5, 2007), available at https://www.gao.gov/products/gao-07-737.

medical care, file fraudulent tax returns, commit crimes, and steal benefits.[25]

77.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[26]

78.    Defendants' offer of limited access credit monitoring services to Plaintiffs and the Class is woefully inadequate and will not fully protect Plaintiffs from the damages and harm caused by its failures.

79.    The full scope of the harm has yet to be realized. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used.

80.    Once the credit monitoring services provided by DRT have expired, Plaintiffs and Class Members will need to pay for their own identity theft protection and credit monitoring services for the rest of their lives due to DRT's gross negligence.

81.    Furthermore, credit monitoring services only alert someone to the fact that they have **already** been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[27]  Nor can an identity monitoring

---

[25] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[26] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), *available at* https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

[27] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

service remove personal information from the dark web.[28]

82.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[29]

83.     As a direct and proximate result of the Data Breach, Plaintiffs and the Class have been damaged and have been placed at an imminent, immediate, and continuing increased risk of harm from continued fraud and identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

84.     Even more seriously is the identity restoration that Plaintiffs and other Class Members must go through, which can include spending countless hours filing police reports, filling out IRS forms, Federal Trade Commission checklists, Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiffs and the Class must take.

---

[28] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know.
[29] *Id.*

85.    Plaintiffs and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

a.  Actual identity theft;

b.  Trespass, damage to, and theft of their personal property including Private Information;

c.  Improper disclosure of their Private Information;

d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their Private Information;

f.  Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h.  Ascertainable losses in the form of deprivation of the value of Plaintiffs' and Class Members' Private Information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

> j.  Damage to their credit due to fraudulent use of their Private Information; and/or
>
> k.  Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

86.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard security measures and safeguards. Defendants have shown themselves wholly incapable of protecting Plaintiffs' and the Class's Private Information.

87.    Plaintiffs and Class Members also have an interest in ensuring that their Private Information is removed from DRT's emails accounts.

88.    Defendants acknowledged the harm caused by the Data Breach because Defendants offered Plaintiffs and Class Members woefully inadequate identity theft repair and monitoring services. However, twelve (12) to twenty-four (24) months of credit monitoring services is inadequate to protect Plaintiffs and Class Members from the lifetime risk of identity theft and fraud they face.

89.    Defendants further acknowledged that the Data Breach would cause inconvenience to affected individuals and that financial harm would likely occur because it advised individuals to enroll in credit monitoring, place a fraud alert/security freeze on credit files, and obtain a free credit report.[30]

---

[30] Ex. 1.

90.    DRT also admitted its current data security measures were not adequate because it stated, "DRT is [] working to implement additional technologies designed to prevent similar attacks including more extensive logging and real-time reporting as well as exploring options for further hardening authentication standards. DRT will also be providing expanded cybersecurity training for its employees."[31]

91.    These enhanced protections should have been in place ***before*** the Data Breach.

92.    At Defendants' suggestion, Plaintiffs and the Class are desperately trying to mitigate the harms DRT has caused them.

93.    Given the kind of Private Information Defendants made accessible to hackers, however, Plaintiffs and the Class are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiffs and all Class Members will need to have credit monitoring and identity theft protection services for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[32]

94.    None of this should have happened because the Data Breach was entirely preventable.

---

[31] *Id.*

[32] *What happens if I change my Social Security number*, Lexington Law (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

**E.    Defendants were Aware of the Risk of Cyberattacks.**

95.    Defendants' negligence, including their gross negligence in failing to safeguard Plaintiffs' and Class Members' Private Information, is exacerbated by the repeated warnings and alerts directed to protect and secure sensitive data.

96.    Private Information—including the types accessed in the Data Breach—are of great value to cybercriminals because this information can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the internet black market known as the dark web.

97.    Private Information can also be used to distinguish, identify, or trace an individual's identity, such as his or her name, Social Security number, and financial records. This may be accomplished alone, or in combination with other personal or identifying information connected or linked to an individual such as his or her birthdate, birthplace, and mother's maiden name.

98.    Data thieves regularly target entities that store Private Information—like DRT—due to the highly sensitive information they maintain. DRT knew and understood that Plaintiffs' and Class Members' Private Information is valuable and highly sought after by cybercriminals who seek to illegally monetize it through unauthorized access.

99.    Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the

names of some of the biggest cybersecurity breaches: Target,[33] Yahoo,[34] Marriott International,[35] Chipotle, Chili's, Arby's,[36] and others.[37]

100. The number of data breach victims has surpassed 1 billion for the first half of 2024, according to the Identity Theft Resource Center.[38]

101. Additionally, as companies became more dependent on computer systems to run their business,[39] e.g., working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[40]

---

[33] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[34] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[35] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/

[36] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018, 12:58 PM), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[37] *See, e.g.*, Michael Hill and Dan Swinhoe, *The 15 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Nov. 8, 2022), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

[38] https://www.usatoday.com/story/money/2024/07/18/data-breach-what-to-do/74441060007/.

[39] *FEDS Notes*, *Implications of Cyber Risk for Financial Stability*, BD. GOVERNORS OF THE FED. RES. SYS., (May 12, 2022), https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html (last visited April 1, 2025).

[40] Suleyman Ozarslan, *Key Threats and Cyber Risks Facing Financial Services and Banking Firms in 2022*, PICUS, (Mar. 24, 2022), https://www.picussecurity.com/key-

102.    DRT was clearly aware of the risks it was taking and the harm that could result from inadequate data security but threw caution to the wind.

103.    Similarly, 10 Roads knew the importance of selecting a vendor and/or independent contractor with adequate data security given the well-publicized rise in data breaches but failed to ensure DRT deployed adequate data security.

104.    As a business in possession of customers' Private Information, DRT knew, or should have known, the importance of safeguarding the Private Information entrusted to it, directly and indirectly, by Plaintiffs and Class Members, and of the foreseeable consequences if its email accounts and systems were breached. Such consequences include the significant costs imposed on Plaintiffs and Class Members due to their Private Information's disclosure to cybercriminals. Nevertheless, DRT failed to implement or follow reasonable cybersecurity measures to protect against the foreseeable harm of this Data Breach.

105.    Additionally, 10 Roads knew or should have known, the importance of safeguarding the Private Information entrusted to it, directly and indirectly, and of the foreseeable consequences if it willingly gave Plaintiffs' and the Class's Private Information to a vendor and/or independent contractor with inadequate data security—such as DRT. Such consequences include the significant costs imposed on Plaintiffs and Class Members due to their Private Information's disclosure to cybercriminals.

---

threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022 (last visited April 1, 2025).

106.    DRT was, or should have been, fully aware of the unique type and the significant volume of data on its email accounts, amounting to thousands of individuals' detailed Private Information, and, thus, the wide extent of individuals who the exposure of that unencrypted data would harm.

107.    Given the nature of the Data Breach, it was foreseeable that Plaintiffs' and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in variety of different injurious ways.

108.    Plaintiffs and Class Members were the foreseeable and probable victims of DRT's inadequate security practices and procedures. The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiffs and Class Members especially vulnerable to identity theft, medical and financial fraud, and similar crimes.

### F.    DRT Could Have Prevented the Data Breach.

109.    Data breaches are preventable.[41] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[42] he added that "[o]rganizations that

---

[41] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.
[42] *Id.* at 17.

collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[43]

110.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[44]

111.    In a data breach like this, many failures laid the groundwork for the breach.

112.    The FTC has published guidelines that establish reasonable data security practices for businesses.

113.    The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[45]

114.    The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.

---

[43]*Id.* at 28.

[44] *Id.*

[45] *Protecting Personal Information: A Guide for Business*, FTC, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

115.    The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

116.    According to information and belief, DRT failed to maintain many reasonable and necessary industry standards necessary to prevent a data breach, including the FTC's guidelines.

117.    Upon information and belief, DRT also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in reasonable cybersecurity readiness.

118.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[46]

119.    To prevent the Data Breach, DRT could have and should have implemented, as recommended by the Federal Bureau of Investigation, the following measures:

---

[46] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read

specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[47]

---

[47] *Id.* at 3–4.

120.    Further, DRT could have and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[48]

121.    In addition, DRT could have and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**

---

[48] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at https://www.cisa.gov/news-events/news/protecting-against-ransomware.

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audit; remove privileged credentials

- **Thoroughly investigate and remediate alerts**

    - Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**

    - Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**

    - Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

- **Apply principle of least-privilege**

    - Monitor for adversarial activities

    - Hunt for brute force attempts

    - Monitor for cleanup of Event Logs

    - Analyze logon events

- **Harden infrastructure**

    - Use Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[49]

122.    Given that DRT was storing the Private Information of thousands of individuals, DRT could have, and should have, implemented all of the above measures to prevent and detect cyberattacks. However, upon information and belief, DRT failed to, resulting in the Data Breach.

123.    Specifically, among other failures, DRT had far too much confidential unencrypted Private Information held on its email accounts and systems. Plaintiffs' and Class Members' Private Information should have been segregated into a separate encrypted database or system and should have never been insecurely transmitted through DRT's email accounts to begin with.[50]

124.    Sending Private Information through emails—as DRT did—is highly discouraged by data security professionals. "Emails are sent using Simple Mail Transfer Protocol (SMTP) which fails to use either encryption or authentication. Mail sent through SMTP can be accessed easily by a third party, thus compromising any information shared

---

[49] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

[50] *See, e.g.,* Adnan Raja, *How to Safeguard Your Business Data with Encryption*, FORTRA (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

through the email. Since email does not use end-to-end encryption, messages are sent in plain text which anyone, authorized or not can read."[51]

125.    Many organizations—including the Federal Trade Commission—warn that businesses should never send Private Information via email.[52] Yet, upon information and belief, DRT transmitted Private Information via unencrypted emails.

126.    Moreover, it is a well-established industry standard practice for a business to dispose of confidential Private Information once it is no longer needed. The FTC, among others, has repeatedly emphasized the importance of disposing unnecessary Private Information, saying simply: "[k]eep sensitive data in your system only as long as you have a business reason to have it.  Once that business need is over, properly dispose of it.  If it's not on your system, it can't be stolen by hackers."[53]  DRT, rather than following this basic standard of care, kept thousands of individuals' unencrypted Private Information indefinitely.

127.    In sum, the Data Breach could have readily been prevented through the use of industry standard network segmentation and encryption of all Private Information.

128.    Further, the scope of the Data Breach could have been dramatically reduced

---

[51] https://your.sealit.id/blog/sending-social-security-number-through-email-sealit.

[52]  https://www.kiteworks.com/secure-email/send-pii-over-email/ ("[Y]ou should never send PII over email."); https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business#:~:text=Answer:-,Yes.,by%20fraudsters%20or%20identity%20thieves. ("Unencrypted email is not a secure way to transmit information.")

[53]  *Protecting Personal Information: A Guide for Business*, FTC,  *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, at p. 6.

had DRT utilized proper record retention and destruction practices.

### G. Plaintiffs' Individual Experiences.

#### i.   *Plaintiff Tyler Watts*

129.    Plaintiff Watts received a Notice Letter from Defendants informing him that his highly confidential Private Information was accessed and/or acquired in the Data Breach.

130.    Upon information and belief, DRT received Plaintiff Watts's Private Information through DRT's relationship with 10 Roads.

131.    Defendants were in possession of Plaintiff Watts's Private Information before, during, and after the Data Breach.

132.    Because of the Data Breach, there is no doubt Plaintiff Watts's highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff Watts and the Class are at an imminent risk of identity theft and fraud.

133.    As a result of the Data Breach, Plaintiff Watts estimates he has already spent 35–40 hours responding to the ramifications of the Data Breach and will need to do so on a reoccurring basis for years to come. As such, Plaintiff Watts has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that he is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

134.    Additionally, after the Data Breach, Plaintiff Watts purchased LifeLock credit monitoring and identity theft protection services for $34.99 per month. Plaintiff Watts will need to continue paying for these services for *years* due to the Data Breach.

135.    Plaintiff Watts places significant value on the security of his Private Information and does not readily disclose it. Plaintiff Watts has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

136.    Plaintiff Watts has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach. Indeed, Defendants acknowledged the present and increased risk of future harm Plaintiff Watts, and the Class now face by offering temporary, non-automatic credit monitoring services to Plaintiff Watts and the Class.

137.    Knowing that thieves intentionally targeted and accessed his Private Information, including his Social Security number, has caused Plaintiff Watts great anxiety beyond mere worry.

138.    Plaintiff Watts has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention,

Plaintiff Watts's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

139.    Plaintiff Watts has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of his valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by his Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of his Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this Private Information against disclosure; (iv) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Watts should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect his Private Information; and (v) continued risk to his Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

### ii.    *Plaintiff Terry Clark*

140.    Plaintiff Clark received a Notice Letter from Defendants informing him that his highly confidential Private Information was accessed and/or acquired in the Data Breach.

141.    Upon information and belief, DRT received Plaintiff Clark's Private

Information from 10 Roads.

142.   Defendants were in possession of Plaintiff Clark's Private Information before, during, and after the Data Breach.

143.   Because of the Data Breach, there is no doubt Plaintiff Clark's highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff Clark and the Class are at an imminent risk of identity theft and fraud.

144.   As a result of the Data Breach, Plaintiff Clark estimates he has already expended hours of his time and will need to do so on a weekly basis. As such, Plaintiff Clark has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that he is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

145.   Plaintiff Clark places significant value on the security of his Private Information and does not readily disclose it. Plaintiff Clark has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

146.   Plaintiff Clark has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach. Indeed, Defendants

acknowledged the present and increased risk of future harm Plaintiff Clark, and the Class now face by offering temporary, non-automatic credit monitoring services to Plaintiff Clark and the Class.

147.    Knowing that thieves intentionally targeted and accessed his Private Information, including his Social Security number, has caused Plaintiff Clark great anxiety beyond mere worry.

148.    Plaintiff Clark has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Clark's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

149.    Plaintiff Clark has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of his valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by his Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of his Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Clark should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect his Private

Information; and (v) continued risk to his Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

### iii.    *Plaintiff Mark Moore*

150.    Plaintiff Moore received a Notice Letter from Defendants informing him his highly confidential Private Information was accessed and/or acquired in the Data Breach.

151.    Upon information and belief, DRT received Plaintiff Moore's Private Information from 10 Roads Express LLC.

152.    Defendants were in possession of Plaintiff Moore's Private Information before, during, and after the Data Breach.

153.    Because of the Data Breach, there is no doubt Plaintiff Moore's highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff Moore and the Class are at an imminent risk of identity theft and fraud.

154.    As a result of the Data Breach, Plaintiff Moore estimates he has already expended hours of his time and will need to do so on a weekly basis. For example, he spend approximately thirty minutes a week reviewing his financial accounts and monitoring his credit. As such, Plaintiff Moore has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that

he is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

155.    Plaintiff Moore places significant value on the security of his Private Information and does not readily disclose it. Plaintiff Moore atts has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

156.    Plaintiff Moore has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach. Indeed, Defendants acknowledged the present and increased risk of future harm Plaintiff Moore, and the Class now face by offering temporary, non-automatic credit monitoring services to Plaintiff Moore and the Class.

157.    Knowing thieves intentionally targeted and accessed his Private Information, including his Social Security number, has caused Plaintiff Moore great anxiety beyond mere worry.

158.    Plaintiff Moore has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Moore's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

159.    Plaintiff Moore has suffered injuries directly and proximately caused by the

Data Breach, including: (i) theft of his valuable Private Information; (ii) the imminent and

certain impending injury flowing from anticipated fraud and identity theft posed by his

Private Information being placed in the hands of cybercriminals; (iii) damages to and

diminution in value of his Private Information that was entrusted to Defendants with the

understanding that Defendants would safeguard this information against disclosure; (iv)

loss of the benefit of the bargain with Defendants to provide adequate and reasonable data

security—*i.e.*, the difference in value between what Plaintiff Moore should have received

from Defendants and Defendants' defective and deficient performance of that obligation

by failing to provide reasonable and adequate data security and failing to protect his Private

Information; and (v) continued risk to his Private Information, which remains in the

possession of Defendants and which is subject to further breaches so long as Defendants

fails to undertake appropriate and adequate measures to protect the Private Information that

was entrusted to Defendants.

## V.    CLASS ACTION ALLEGATIONS

160.    Plaintiffs incorporate by reference all preceding paragraphs as if fully

restated here.

161.    Plaintiffs bring this action against Defendants on behalf of themselves, and

all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiffs

assert all claims on behalf of a nationwide class (the "Class") defined as follows:

**All persons whose Private Information was compromised in the Data Breach, including all individuals who were sent a Notice Letter after the Data Breach.**

162.    Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

163.    Plaintiffs reserve the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

164.    Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendants' own business records or electronic media can be utilized for the notice process.

165.    The proposed Class meets the requirements of Federal Rule of Civil Procedure 23.

166.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. The estimated class size is <u>14,470 individuals</u>.[54]

167.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendants' uniform misconduct. DRT's inadequate data security gave rise to Plaintiffs' claims and are identical to those that

---

[54]        https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d0b33c1b-1d09-478b-b237-d99b999b9926.html.

give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive PII compromised in the same way by the same misconduct of Defendants.

168.    **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the Class; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

169.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the Court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the Court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

170.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendants engaged in the wrongful conduct alleged herein;

b. Whether Defendants failed to adequately safeguard Plaintiffs' and the Class's Private Information;

c. Whether Defendants owed a duty to Plaintiffs and the Class to adequately protect their Private Information, and whether it breached this duty;

d. Whether Defendants breached their duties to Plaintiffs and the Class;

e. Whether DRT failed to provide adequate cyber security;

f. Whether DRT knew or should have known that its email accounts and data security systems were vulnerable to cyberattacks;

g. Whether DRT's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its email accounts;

h. Whether 10 Roads failed to properly vet DRT's data security practices and infrastructure before entrusting DRT with the Private Information of Plaintiffs and the Class;

i. Whether DRT was negligent in permitting unencrypted Private Information of thousands of individuals to be stored within its email accounts;

j.  Whether DRT was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

k.  Whether Defendants breached implied contractual duties to Plaintiffs and the Class to use reasonable care in protecting their Private Information;

l.  Whether DRT failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

m.  Whether Defendants continue to breach duties to Plaintiffs and the Class;

n.  Whether Plaintiffs and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

o.  Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief; and

p.  Whether Defendants' actions alleged herein constitute gross negligence, and whether Plaintiffs and Class Members are entitled to punitive damages.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiffs and the Class Against DRT)

171.  Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

172.  DRT solicited, gathered, and stored the Private Information of Plaintiffs and Class Members.

173.    Upon accepting and storing the Private Information of Plaintiffs and Class Members on its computer systems, email accounts, and networks, DRT undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiffs and the Class from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

174.    DRT had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information was wrongfully disclosed. Plaintiffs and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the Class Members had no ability to protect their Private Information that was in DRT's possession. As such, a special relationship existed between DRT and Plaintiffs and the Class.

175.    Because of this special relationship, DRT required Plaintiffs and Class Members to provide their Private Information, including names, Social Security numbers, and other Private Information to DRT either directly or indirectly.

176.    Implied in these exchanges was a promise by DRT to ensure that the Private Information of Plaintiffs and Class Members in its possession was only used for the provided purpose and that DRT would destroy any Private Information that it was not required to maintain.

177.    As part of this special relationship, DRT had a duty to perform with skill, care, and reasonable expedience and faithfulness.

178.    Through DRT's acts and omissions, including DRT's failure to provide adequate data security, its failure to protect Plaintiffs' and Class Members' Private Information from being foreseeably accessed, and its improper retention of Private Information it was not required to maintain, DRT negligently failed to observe and perform its duty.

179.    Plaintiffs and Class Members did not receive the benefit of the bargain with DRT, because providing their Private Information was in exchange for DRT's implied agreement to secure and keep it safe and to delete it once no longer required.

180.    DRT was aware of the fact that cybercriminals routinely target companies and corporations through cyberattacks in an attempt to steal customer and employee Private Information. In other words, DRT knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.

181.    DRT owed Plaintiffs and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiffs and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

182.    DRT's duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats

protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

183. DRT had duties to protect and safeguard the Private Information of Plaintiffs and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that DRT owed Plaintiffs, and the Class include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing DRT's networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiffs' and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems;

c. To implement processes to quickly detect a data breach, security incident, or intrusion involving its networks, email accounts, and servers; and

d. To promptly notify Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

184. Plaintiffs and the Class were the intended beneficiaries of DRT's duties, creating a special relationship between them and DRT. DRT was in a position to ensure

that its systems were sufficient to protect the Private Information that Plaintiffs and the Class had entrusted to it.

185.    Plaintiffs' injuries and damages, as described herein, are a reasonably certain consequence of DRT's negligence and breach of its duties.

186.    DRT breached its duties of care by failing to adequately protect Plaintiffs' and Class Members' Private Information. DRT breached its duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, and protecting the Private Information in its possession;

b.    Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

c.    Failing to consistently enforce security policies aimed at protecting Plaintiffs and the Class's Private Information;

d.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

e.    Failing to promptly notify Plaintiffs and Class Members of the Data Breach that affected their Private Information.

187.    DRT's willful failure to abide by these duties was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

188.    As a direct and proximate result of DRT's negligent conduct, including but not limited to its failure to implement and maintain reasonable data security practices and

procedures as described above, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

189.   Through DRT's acts and omissions described herein, including but not limited to DRT's failure to protect the Private Information of Plaintiffs and Class Members from being stolen and misused, DRT unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiffs and Class Members while it was within DRT's possession and control.

190.   Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class Members, DRT prevented Plaintiffs and Class Members from taking meaningful, proactive steps to securing their Private Information and mitigating damages.

191.   Plaintiffs and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

192.   Plaintiffs and Class Members could have enrolled in credit monitoring, could have instituted credit freezes, and could have changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

193.   Plaintiffs and Class Members have suffered harm from the delay in notifying them of the Data Breach.

194.   As a direct and proximate cause of DRT's conduct, including but not limited to its failure to implement and maintain reasonable security practices and procedures, Plaintiffs and Class Members have suffered, as Plaintiffs have, and/or will suffer injury

and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in DRT's possession and is subject to further unauthorized disclosures so long as DRT fails to undertake appropriate and adequate measures to protect the Private Information of employees in its continued possession; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

195.    The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of DRT's negligent conduct.

196.   Plaintiffs and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiffs and the Class Against DRT)**

197.   Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

198.   Pursuant to the FTC Act, 15 U.S.C. § 45(a), DRT had a duty to Plaintiffs and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and the Class.

199.   The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as DRT, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of DRT's duty in this regard.

200.   DRT gathered and stored the Private Information of Plaintiffs and the Class as part of their business which affects commerce.

201.   DRT violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

202.   DRT breached its duties to Plaintiffs and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security

practices to safeguard Plaintiffs' and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

203.    DRT's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

204.    Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

205.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

206.    DRT breached its duties to Plaintiffs and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Private Information.

207.    DRT breached its duties to Plaintiffs and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiffs and the Class.

208.    DRT's violations of the FTC Act constitute negligence *per se*.

209.    As a direct and proximate result of DRT's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

210.    The injury and harm that Plaintiffs and Class Members suffered (as alleged above) was the direct and proximate result of DRT's negligence *per se*.

211.    Plaintiffs and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

212.    Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

213.    DRT entered into uniform written contracts with its clients, including 10 Roads, to provide services.

214.    Pursuant these contracts, DRT received from its clients and maintained Plaintiffs' and Class Members' Private Information in the course of performing its contractual services, which it could not perform without receiving and maintaining such Private Information.

215.    Pursuant to these contracts, DRT's clients, including 10 Roads Express LLC, agreed to provide DRT with compensation and Plaintiffs' and Class Members' Private Information.

216.    In exchange, DRT agreed, in part, to implement adequate data security measures to safeguard Plaintiffs' and Class Members' Private Information from unauthorized disclosure, and to timely notify Plaintiffs and Class Members of the Data Breach.

217.    DRT was required by statutes and regulations, including but not limited to the FTC Act and state consumer privacy and protection laws, to have contracts with its clients that required DRT to implement and maintain reasonable security procedures and

practices to protect its clients' customers'—Plaintiffs and Class Members—Private Information from unauthorized access, use, or disclosure.

218.    The relevant statutes and regulations obligating DRT to promise by contract to use reasonable data security for Plaintiffs' and Class Members' Private Information create a class of intended beneficiaries whose members are implied into such agreements by operation of law. Plaintiffs and Class Members are the intended beneficiaries of the contracts that DRT entered into.

219.    Upon information and belief, DRT's contracts with its clients each contained a provision requiring DRT to implement and maintain reasonable security procedures and practices appropriate to the nature of Private Information DRT collected, to protect the Private Information from unauthorized access, use, or disclosure.

220.    These contracts between DRT and its clients were made expressly for the benefit of Plaintiffs and Class Members as the intended third-party beneficiaries of these contracts.

221.    DRT knew Plaintiffs and Class Members were involved and would benefit from the transactions that were subject to these contracts between DRT's clients and DRT.

222.    DRT knew that if it breached its contractual obligation to adequately safeguard Plaintiffs' and Class Members' Private Information, Plaintiffs and Class Members would be harmed.

223.    DRT breached these contracts with entities such as 10 Roads Express LLC, by, among other acts and omissions: (i) failing to use reasonable data security measures;

(ii) failing to implement adequate protocols and employee training sufficient to protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure; and (iii) failing to promptly or adequately notify Plaintiffs and Class Members of the Data Breach.

224.    As a direct and proximate result of DRT's breaches of these contracts with its clients, Plaintiffs and Class Members have suffered and will continue to suffer injuries as set forth herein and are entitled to damages sufficient to compensate for the losses they sustained.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class Against All Defendants)**

225.    Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

226.    Plaintiffs plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein, to the extent Plaintiffs and Class Members may not have an adequate remedy at law against Defendants.

227.    Plaintiffs and Class Members conferred a monetary benefit on Defendants. Specifically, they provided their Private Information to Defendants. In exchange, Plaintiffs and Class Members should have had their Private Information protected with adequate data security. Without the collection and receipt of Plaintiffs' and the Class's Private Information, Defendants would not be able to provide services and would be unable to obtain revenue.

228.    Defendants knew Plaintiffs and Class Members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the Private

Information entrusted to them, and indeed, generating revenue from doing so. Defendants profited from Plaintiffs' retained data and used Plaintiffs' and Class Members' Private Information for business purposes.

229.    Defendants failed to secure and protect Plaintiffs' and Class Members' Private Information and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their Private Information provided.

230.    Defendants acquired the Private Information through inequitable means as they failed to investigate and/or disclose the inadequate data security practices as alleged herein.

231.    DRT enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Personal Information.

232.    10 Roads enriched itself by saving the costs it reasonably should have expended on a vendor and/or independent contractor with adequate data security measures to secure Plaintiffs' and Class Members' Personal Information

233.    Instead of DRT providing a reasonable level of data security that would have prevented the Data Breach, and 10 Roads utilizing a vendor and/or independent contractor with a reasonable level of data security that would have prevented the Data Breach, Defendants calculated to increase their own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures and vendors and/or independent contractors and diverting those funds to their own pockets. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants'

decisions to prioritize their own profits over the requisite security of customers' Private Information.

234. Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon them.

235. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will suffer injuries and damages as set forth herein.

236. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT SELECTION, HIRING, RETENTION AND SUPERVISION**
**(On Behalf of Plaintiffs and the Class Against 10 Roads)**

237. Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

238. 10 Roads may be held responsible for DRT's negligent acts if: (i) 10 Roads knew or should have known that DRT was incompetent; and (ii) a third person was injured because of the DRT's incompetence.

239. At all relevant times, DRT was Defendants' independent contractor. 10 Roads allowed DRT access to the Private Information of Plaintiffs and the Class without: (i) vetting DRT and inquiring about its data security qualifications; (ii) inquiring about and/or investigating DRT's data security procedures, protocols, and infrastructure; (iii) ensuring

DRT had data security systems and procedures compliant with the FTC Act, and recognized industry standards; (iv) ensuring DRT adequately secured and protected Private Information in its possession from data breaches; and/or (v) advising DRT of the confidential nature of Plaintiffs' and the Class's Private Information and its duty to protect that information.

240.    If 10 Roads would have inquired into the adequacy of DRT's data security prior to selecting, retaining, and hiring DRT, 10 Roads would have known DRT was incompetent and incapable of adequately protecting and securing Plaintiffs' and the Class's Private Information. Reason being, 10 Roads would have discovered DRT *did not* have data security measures in place that were compliant with the FTC Act and recognized industry standards. Under these circumstances, 10 Roads knew or should have known that DRT was incompetent.

241.    However, 10 Roads was negligent and failed to exercise the requisite standard of care in the hiring, selecting, and retaining DRT. As a result, cybercriminals accessed and/or acquired Plaintiffs' and the Class's Private Information and caused the damages delineated herein by virtue of the Data Breach.

242.    10 Roads owed a duty to Plaintiffs and the Class to ensure DRT had adequate data security, procedures, and protocols sufficient to protect Plaintiffs' and the Class's Private Information from data breaches prior to hiring DRT.

243.    10 Roads also owed a continuing duty to Plaintiffs and the Class to ensure DRT continued to employ adequate data security, procedures, and protocols sufficient to

protect Plaintiffs' and the Class's Private Information from data breaches after hiring DRT.

244.    10 Roads breached these duties by failing to ensure DRT possessed the requisite data security, procedures, practices, infrastructure, and protocols to protect Plaintiffs' and the Class's Private Information from data breaches prior to hiring DRT and while DRT worked for 10 Roads.

245.    Additionally, 10 Roads breached its duties and obligations by: (i) failing to ensure DRT designed, implemented, monitored, and maintained reasonable network and email safeguards against foreseeable threats; (ii) failing to ensure DRT designed, implemented, and maintained reasonable data retention policies; (iii) failing to ensure DRT adequately trained or oversaw its employees regarding data security; (iv) failing to ensure DRT complied with industry standard data security practices; (v) failing to ensure DRT encrypted or adequately encrypted the Private Information that was stored on DRT's email accounts and network; (vi) failing to ensure DRT had systems or processes in place to recognize or detect that DRT's email and/or network had been compromised and accessed; (vii) failing to ensure DRT utilized widely available software able to detect and prevent data breaches; and (viii) failing to ensure DRT otherwise adequately secured the Private Information of Plaintiffs and the Class using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

246.    10 Roads was on notice of the importance of data security because of well-publicized data breaches occurring throughout the United States. Despite knowledge of prior data breaches, 10 Roads failed to ensure DRT possessed the requisite data security

posture to protect Plaintiffs' and the Class's Private Information from unauthorized disclosure.

247.    10 Roads knew or should have known that the failure to ensure DRT employed adequate data security, procedures, and protocols would create an unreasonable risk of danger to persons and property.

248.    As a direct and proximate result of 10 Roads's breach of its duties, and its negligent hiring, retention, supervision, and selection of DRT, Plaintiffs and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, diminution in value of their Private Information, and actual misuse of their Private Information.

249.    Upon information and belief, 10 Roads was advised of the Data Breach, but continued to employ DRT, putting Plaintiffs and the Class at risk of more data breaches in the future.

250.    The acts and omissions of 10 Roads in negligently hiring, retaining, and/or selecting DRT are such as to show gross negligence and reckless disregard for the safety of others and, therefore, punitive damages are appropriate.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Class Against All Defendants)**

251.    Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

252.    Defendants required Plaintiffs and Class Members to provide and entrust their Private Information to Defendants as a condition of obtaining services, benefits, and/or employment.

253.    When Plaintiffs and Class Members provided their Private Information to Defendants, they entered into implied contracts with Defendants. Pursuant to these contracts, Defendants agreed, as manifested through their conduct, to safeguard and protect such Private Information and to timely and accurately notify Plaintiffs and Class Members if and when their Private Information was breached and compromised.

254.    Specifically, Plaintiffs and Class Members entered into valid and enforceable implied contracts with Defendants when they agreed to provide their Private Information to Defendants, and Defendants agreed to collect, maintain, and profit from that Private Information.

255.    The valid and enforceable implied contracts that Plaintiffs and Class Members entered into with Defendants included Defendants' promises to protect Private Information they collected from Plaintiffs and Class Members against unauthorized disclosures. Plaintiffs and Class Members provided this Private Information in reliance on Defendants' promises.

256.    Under the implied contracts, Defendants promised and were obligated to protect Plaintiffs' and Class Members' Private Information provided to obtain services, benefits, and/or employment. In exchange, Plaintiffs and Class Members agreed to provide Defendants with their Private Information.

257.    Defendants promised and warranted to Plaintiffs and Class Members, through privacy documents and conduct, to maintain the privacy and confidentiality of the Private Information they collected from Plaintiffs and Class Members and to keep such information safeguarded against unauthorized access and disclosure.

258.    Defendants' adequate protection of Plaintiffs' and Class Members' Private Information was a material aspect of these implied contracts with Defendants.

259.    Defendants solicited and invited Plaintiffs and Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

260.    By entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that: (i) DRT's data security practices complied with industry standards and relevant laws and regulations, including the FTC Act; and (ii) that 10 Roads would ensure any vendors and/or independent contractors 10 Roads selected and utilized complied with industry standards and relevant laws and regulations, including the FTC Act.

261.    Plaintiffs also reasonably believed that 10 Roads would properly vet and inquire into the data security of any vendor and/or independent contractor it used—such as DRT— to ensure their Private Information was adequately protected and not susceptible to data breaches.

262.    Plaintiffs and Class Members, who contracted with Defendants, provided their Private Information to Defendants and reasonably believed and expected that (i) DRT would employ adequate data security; and (ii) 10 Roads would utilize vendors and/or independent contractors with adequate data security to protect their Private Information. However, Defendants utterly failed to do so.

263.    A meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendants and agreed Defendants would receive payment for and benefit from, amongst other things, the protection of their Private Information.

264.    Plaintiffs and Class Members performed their obligations under the contracts when they provided their Private Information and/or payment to Defendants.

265.    Defendants materially breached their contractual obligations to protect the Private Information they required Plaintiffs and Class Members to provide when that Private Information was unauthorizedly disclosed in the Data Breach due to: (i) DRT's inadequate data security measures and procedures; and (ii) 10 Roads's failure to ensure its vendors and/or independent contractors—such as DRT—had adequate data security measures and procedures in place.

266.    Defendants materially breached their contractual obligations to deal in good faith with Plaintiffs and Class Members when: (i) DRT failed to take adequate precautions to prevent the Data Breach; (ii) 10 Roads failed to ensure DRT took adequate precautions

to prevent a data breach; and (iii) Defendants failed to timely or adequately notify Plaintiffs and Class Members about the Data Breach.

267. The Data Breach was a reasonably foreseeable consequence of Defendants' conduct, by acts of omission or commission, in breach of these implied contracts with Plaintiffs and Class Members.

268. As a result of DRT's failure to fulfill the data security protections promised in these contracts and 10 Roads's failure to utilize vendors and/or contractors with adequate data security protections, Plaintiffs and Class Members did not receive the full benefit of their bargains with Defendants and instead received services of a diminished value compared to that described in the implied contracts. Plaintiffs and Class Members were therefore damaged in an amount at least equal to the difference in the value of the services with data security protection they were promised and that which they received.

269. Had DRT disclosed that its data security procedures were inadequate or that it did not adhere to industry standards for cybersecurity, neither Plaintiffs, Class Members, nor any reasonable person would have contracted with Defendants.

270. Similarly, 10 Roads disclosed that it would be using a vendor and/or independent contractor with inadequate data security or that it would not be vetting potential vendors and/or independent contractors to ensure they had adequate data security Plaintiffs, and the Class would not have contracted with 10 Roads.

271.    Plaintiffs and Class Members would not have provided and entrusted their Private Information to Defendants in the absence of the implied contracts between them and Defendants.

272.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendants.

273.    Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or restitution damages, in an amount to be proven at trial, due to Defendants' breach of implied contract.

**SEVENTH CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiffs and the Class Against All Defendants)**

274.    Plaintiffs incorporate paragraphs 1–170 as though fully set forth herein.

275.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary supplemental relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

276.    In the fallout of the Data Breach, a controversy has arisen about: (i) DRT's duties to use reasonable data security for the Private Information it collects and maintains; and (ii) 10 Roads's duties to use vendors and/or independent contractors with reasonable data security for the Private Information it collects and maintains.

277.    On information and belief, Defendants' actions were—and still are— inadequate and unreasonable. Plaintiffs and Class Members continue to suffer injuries from

the ongoing threat of fraud and identity theft due to DRT's inadequate data security measures and 10 Roads's failure to use vendors and/or independent contractors with adequate data security measures.

278.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring as follows:

   a.   DRT owed—and continues to owe—a legal duty to use reasonable data security to secure the Private Information entrusted to it;

   b.   10 Roads owed—and continues to owe—a legal duty to ensure any vendors and/or contractors it hires use reasonable data security to secure the Private Information entrusted to it;

   c.   Defendants have a duty to notify impacted individuals of the Data Breach under common law, Section 5 of the FTC Act, and HIPAA;

   d.   DRT breached, and continues to breach, its duties by failing to use reasonable measures to protect the Private Information entrusted to it from unauthorized access, use, and disclosure

   e.   10 Roads breached, and continues to breach, its duties by failing to ensure the vendors and/or contractors it utilizes deploy adequate data security and/or by willingly using vendors and/or contractors who fail to use reasonable measures to protect the Private Information; and

   f.   Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class Members.

279.    The Court should also issue injunctive relief requiring DRT to use adequate data security consistent with industry standards and 10 Roads to use vendors and/or independent contractors with adequate security consistent with industry standards.

280.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injuries and lack an adequate legal remedy if a second data breach occurs. And if a second breach occurs, Plaintiffs and Class Members will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted for out-of-pocket damages and other legally quantifiable and provable damages, cannot cover the full extent of Plaintiffs' and Class Members' injuries.

281.    If an injunction is not issued, the resulting hardship for Plaintiffs and Class Members far exceeds the minimal hardship that Defendants could experience if an injunction is issued.

282.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class Members, and the public at large.

## VII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants as follows:

    a.  An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the

undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b.  A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including compensatory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Consolidated Class Action Complaint.

Dated:  October 2, 2025                     Respectfully submitted,

                                            */s/: J. Barton Goplerud*
                                            J. Barton Goplerud, AT0002983
                                            Brian O. Marty, AT0011622
                                            **SHINDLER ANDERSON GOPLERUD &**

**WEESE P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
T: (515) 223-4567
F: (515) 223-8887
E: goplerud@sagwlaw.com

Leanna A. Loginov
Interim Co-Lead Class Counsel
**SHAMIS & GENTILE P.A.**
14 N.E. 1st Ave, Suite 705
Miami, Florida 33132
T: (305) 479-2299
F: (786) 623-915
E: lloginov@shamisgentile.com

William B. Federman
Kennedy M. Brian
Interim Co-Lead Class Counsel
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
T: (405) 235-1560
F: (405) 239-2112
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com

Leigh S. Montgomery
**EKSM, LLP**
4200 Montrose Blvd, Suite 200
Houston, Texas 73120
T: (888) 350-3931
E: lmontgomery@eksm.com

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 2, 2025, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

_/s/ J. Barton Goplerud_
J. Barton Goplerud, AT0002983