**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION**

---

**IN RE: DRT LLC DATA SECURITY
LITIGATION**

Case No.: 1:25-cv-00013-RGE-HCA

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS CLASS ACTION
COMPLAINT OR, ALTERNATIVELY,
MOTION TO COMPEL ARBITRATION**

---

Defendants, DRT LLC ("DRT") and 10 Roads Express, LLC ("10 Roads") (collectively, "Defendants"), submit this brief in support of their Motion to Dismiss Class Action Complaint or, Alternatively, Motion to Compel Arbitration.

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................2

ARGUMENT SUMMARY ........................................................................................................2

STANDARD OF REVIEW ........................................................................................................3

ALLEGATIONS OF THE COMPLAINT ................................................................................4

ARGUMENT ..............................................................................................................................6

    I.    Plaintiffs Lack Standing to Bring Suit .........................................................................6

    II.    The Consolidated Class Action Complaint Fails to State a Claim .............................12

    III.    Watts and Moore are Subject to Arbitration Agreements and Class Waivers ............17

    IV.    Individualized Issues of Fact and Law Preclude Class Certification...........................21

CONCLUSION .........................................................................................................................21

## INTRODUCTION

This matter relates to a cybersecurity incident whereby one or more criminal actors (the "Cybercriminals") gained unauthorized remote access to DRT owned email accounts on May 29, 2025 (the "Incident"). Compl. ¶ 9, Doc. 20-1. Upon learning of the Incident, DRT promptly investigated to determine the full scope of the access and discovered that certain emails within the relevant accounts contained files with personally identifiable information (*i.e.*, names, addresses, Social Security numbers) ("PII") that *may* have been access or acquired. Compl. ¶¶ 10, 12, Doc. 20-1. Importantly, the investigation was unable to determine whether these files had been accessed or acquired by the Cybercriminals but, as a precautionary measure and in an effort to comply with state and federal notice requirements, DRT sent notices to individuals who may have been affected. Compl. ¶¶ 11, 13, Doc. 20-1. In addition, DRT took several steps to bolster its protective systems and protect the PII in its possession from future incidents. Compl. ¶¶ 50, 90, Doc. 20-1. Out of an abundance of caution, DRT also offered the notice recipients identity theft protection services to help monitor, identify, and resolve any *potential* issues that could arise. Compl. ¶ 25, Doc. 20-1.

## ARGUMENT SUMMARY

Plaintiffs bring their Complaint on behalf of themselves and other "current and/or former customers and employees of entities that utilized DRT's services, such as 10 Roads" whose PII may have been accessed or acquired during the Incident. Compl. ¶¶ 1, 5, Doc. 20-1. The Complaint must be dismissed. First, none of the three putative class representatives have the requisite standing to represent the putative class. Second, even if one or more Plaintiffs have standing, the claims asserted fail as a matter of law. Third, and in the alternative to Defendants' Motion to Dismiss, Plaintiffs Watts and Moore are inappropriate class representatives and must be dismissed from the present matter. Finally, the putative class is permeated with individualized issues of fact and law, making this class action an improper forum for the members' claims.

2

## STANDARD OF REVIEW

### I.    Motion to Dismiss for Lack of Subject Matter Jurisdiction – Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) "plac[es] the burden of proving the existence of subject matter jurisdiction on the plaintiff." *Robinson v. United States*, 139 F.4th 994, 996 (8th Cir. 2025) (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Parties must have standing to sue to establish subject matter jurisdiction. *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021). "Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601 (8th Cir. 2022). The representatives of a putative class must show they personally have standing and cannot rely on the alleged injuries of unnamed members of the putative class they seek to represent. *In re SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir. 2017) ("*SuperValu I*") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016)). Without standing, a court will not reach the merits of the case, and the case is to be dismissed. *Christian Lab. Ass'n v. City of Duluth*, 142 F.4th 1107, 1111 (8th Cir. 2025).

### II.    Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "alleg[e] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017). A claim meets the plausibility standard when its "factual context … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court must not "assume the truth of allegations that are merely conclusory in nature…and [will] reject 'catch-all assertions of law and unwarranted inferences[.]'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) ("*SuperValu II*") (internal citations omitted).

## ALLEGATIONS OF THE COMPLAINT

As an initial matter, while under both Rule 12(b)(1) and Rule 12(b)(6) plaintiffs are "entitled to the benefit of all reasonable inferences that may be drawn from the complaint's allegations[,]" these allegations must arise to "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *SuperValu II*, 925 F.3d at 962, 964. A court will not "assume the truth of allegations that are merely conclusory in nature" or "catch-all assertions of law and unwarranted inferences[.]" *Id*. at 962.

The 75-page Complaint is replete with mischaracterizations of fact inconsistent with the very evidence it incorporates, and conclusory statements of both law and fact. While the following examples are by no means exhaustive, they provide a clear preview of Plaintiffs' shortcomings:

- "Plaintiffs' and the Class's PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives." Compl. ¶ 1.

- "[C]ybercriminals had already accessed and stolen Plaintiffs' and Class Members' Private Information." Compl. ¶ 14.

- "Plaintiffs' and Class Members' Private Information was accessed and/or acquired by cybercriminals and exposed to an untold number of unauthorized individuals." Compl. ¶ 21.

- "The exposure of an individual's Private Information due to a data breach ensures that the individual will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population[.]" Compl. ¶ 22.

- "[C]ybercriminals accessed and obtained everything they need to commit identity theft and fraud and wreak havoc on the financial and personal lives of thousands of individuals." Compl. ¶ 23.

4

- "Plaintiffs' and Class Members' Private Information was accessed and/or stolen from DRT's inadequately secured email accounts[.]" Compl. ¶ 49.

- "DRT admits Cybercriminals have accessed and/or stolen Plaintiffs' and the Class's Private Information. These cybercriminals will publish Plaintiffs' and Class Members' Private Information on the dark web—if the cybercriminals have not already done so." Compl. ¶ 54.

- "Private Information accessed and/or stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiffs and the Class Members and to profit off their misfortune." Compl. ¶ 66.

- "This was a financially motivated data breach, because the only reason cybercriminals go through the trouble of running targeted cyberattacks against entities like DRT is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein." Compl. ¶ 71.

- "These risks are certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, *they will use it.*" Compl. ¶ 74 (emphasis in Complaint).

Perhaps the most glaring and determinative conclusory mischaracterization Plaintiffs repeatedly allege is that the Cybercriminals *certainly* accessed and/or acquired Plaintiffs' PII and that it was stolen, posted, and used by the Cybercriminals for malicious purposes. This is directly contradicted by Plaintiffs' only source of information about the Incident—DRT's "Notice of Data Security Incident" (Doc. 20-1) (the "Notice").

DRT's investigation was only able to determine which of its email accounts the Cybercriminals accessed. Compl. ¶ 9, Doc. 20-1. Some of these accounts sent and/or received

emails with files that contained PII of putative class members. Compl. ¶ 11, Doc. 20-1. It was *not* definitively determined that these files *were* accessed, acquired, stolen, or used. *Id*. In fact, not one of the representative Plaintiffs allege that they have discovered any of their PII on the dark web, let alone any document including their PII traceable to DRT. *See, e.g.*, Compl. ¶¶ 132, 143, 153 ("Because of the Data Breach, there is no doubt [Plaintiffs'] highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web."). Further, Plaintiffs have not alleged, other than in conclusory fashion, that they, or *any* class member, have been the victim of actual identity theft. The Complaint instead relies on "an imminent risk of fraud and identity theft for the rest of [Plaintiffs'] lives[.]" Compl. ¶ 25. This is insufficient.

After setting aside Plaintiffs' mischaracterizations and conclusory allegations, what remains is a skeleton of the otherwise inordinate Complaint, which can easily be dismissed under both Rule 12(b)(1) or Rule 12(b)(6).

## **ARGUMENT**

### I.    **Plaintiffs Lack Standing to Bring Suit**

The Complaint, on its face, is legally insufficient to establish Plaintiffs' Article III standing and must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1). "To establish standing to sue in federal court, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *McNaught v. Nolen*, 76 F.4th 764, 768-69 (8th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

### a. Plaintiffs Have Not Alleged Any Injury in Fact

Plaintiffs' failure to allege any injury in fact is fatal to their Complaint. "To establish an injury in fact, a plaintiff must show that her injury is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (citing *Spokeo*, 578 U.S. at 330). The injury is "fairly traceable" if the plaintiff shows "'a causal connection between the injury and the conduct complained of' that is 'not…th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs' alleged injuries can be separated into two general categories—past injury versus future injury. In this case, neither category meets the requisite elements for Article III standing and the Complaint must be dismissed.

### i. Alleged Past Injuries Fail to Establish Standing

Plaintiffs' alleged past injuries do not satisfy Article III standing requirements. Plaintiffs allege they have suffered (1) actual identity theft and fraud; (2) financial costs incurred due to actual identity theft; (3) loss of time incurred due to actual identity theft; and (4) emotional distress dealing with the Data Breach. Compl. ¶ 26. However, Plaintiffs fail to provide any factual support for these conclusory allegations. The only source of information Plaintiffs rely on related to the data breach, the identity and actions of the cybercriminals, and what information the cybercriminals may have accessed, is the Notice sent by DRT. Doc. 20-1. Importantly, the Notice states:

> On June 11, 2025 DRT discovered emails containing PII which *may have been accessed or acquired.* Although the investigation *could not determine whether any information was acquired*, it is possible that there was unauthorized access to PII in files in these email accounts, such as a spreadsheet or documents used for internal business purposes.

Doc. 20-1 (emphasis added).

The Eighth Circuit's decision in *SuperValu I* is instructive. In that case, plaintiffs were sixteen customers who used their credit or debit cards to make purchases at one of defendant's several grocery stores. *SuperValu I*, 870 F.3d at 767. Plaintiffs brought claims including negligence, negligence per se, breach of implied contract, unjust enrichment, and violation of state data breach and consumer protection statutes. *Id*. Critical to the outcome, and the Court's decision that only *one* plaintiff had standing, none of the remaining fifteen plaintiffs alleged that they suffered *actual* identity theft. *Id*. at 771-72.

In contrast, the remaining plaintiff "allege[d] that he suffered a fraudulent charge on the credit card he previously used to make a purchase at one of defendants' stores affected by the data breaches." *Id*. at 772; *see also Bell v. Acxiom Corp.,* No. 4:06CV00485-WRW, 2006 WL 2850042, at *2 (E.D. Ark. Oct. 3, 2006) (Plaintiff lacked standing because she did not allege she "suffered anything greater than an increased risk of identity theft."); *Harris v. Mercy Health Network, Inc.*, No. 4:23-CV-00195-SHL-SBJ, 2024 WL 5055556 (S.D. Iowa June 26, 2024) (four of five plaintiffs lacked standing on non-contract claims because they failed to plausibly allege a past injury or *substantial* risk of future injury); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052 (E.D. Mo. 2009) (increased risk of future identity theft insufficient to confer standing).

In the present case, Plaintiffs' vague references to past injuries fall short of an "injury in fact" as none of the class representatives have adequately alleged that their PII was actually stolen, posted, and used by cybercriminals. *E.g*., Compl. ¶ 132 ("there is no doubt Plaintiff Watts's highly confidential Private Information is in the hands of cybercriminals…Plaintiff Watts and the Class are at an imminent *risk* of identity theft and fraud.") (emphasis added); *Id*. at ¶ 143 (same as to Plaintiff Clark); *Id*. at ¶ 153 (same as to Plaintiff Moore). First, the Complaint lacks any nonconclusory allegations that Plaintiffs' PII was actually obtained by the Cybercriminals. *E.g.*

Compl. ¶¶ 132, 143, 153, Doc. 20-1. In fact, throughout, it repeatedly alleges only that it *may* have

been. Compl. ¶¶ 10, 11, 50, 183d, Doc. 20-1. Second, even if Plaintiffs' allegations meet this first

threshold, the Complaint does *not* adequately allege that Plaintiffs' PII has been *misused* in order

to establish a past injury. Again, *SuperValu I* is controlling:

> With the exception of [one], the named plaintiffs have not alleged that they have
> suffered fraudulent charges on their credit or debit cards or that fraudulent accounts
> have been opened in their names. Plaintiffs point to the allegations that, on
> information and belief, illicit websites are selling their Card Information to
> counterfeiters and fraudsters, and that plaintiffs' financial institutions are
> attempting to mitigate their risk. Not only are these allegations speculative, they
> also fail to allege any injury "to the plaintiff[s]."

*SuperValu I.*, 870 F.3d at 769-70.

The Complaint lacks any allegation that Plaintiffs have discovered their PII on the dark

web or have suffered any sort of identity theft, let alone anything traceable to the DRT Incident.

*See Weiher v. Community Alliance, Inc. et al*, 8:25CV00020 (Doc. 20, *Memorandum and Order

on Defendants' Motion to Dismiss*) (July 16, 2025) ("[Plaintiff] provides no citation to any

evidence and no allegations of facts plausibly supporting his otherwise conclusory allegation that

private information has been accessed, posted, or made available to others to view on the dark

web.")

The only potential past injury alleged by Plaintiffs unrelated to "actual identity theft"

(which Plaintiffs have not plausibly alleged) is "emotional distress including anxiety and stress in

with [sic] dealing with the Data Breach[.]" Compl. ¶ 26. However, the Iowa Supreme Court has

expressly refused "to recognize an independent claim for emotional distress based on negligence

without some physical harm" and this alleged injury need not be considered. *Harris v. Mercy

Health Network, Inc.*, 2024 WL 5055556, at *15 (quoting *Clark v. Est. of Rice ex rel. Rice*, 653

N.W.2d 166, 170 (Iowa 2002)). Plaintiffs' allegations of *actual identity theft* or other past injury

fail to establish Article III standing.

### ii. Alleged Future Injuries Fail to Establish Standing

Further, Plaintiffs cannot rely on alleged future injuries to establish an injury in fact as they fail to show that the threat of future injury is "certainly impending" or there is a "substantial risk" that any harm will occur. *See SuperValu I*, 870 F.3d at 769. Plaintiffs' alleged future injuries include (1) financial costs incurred mitigating the risk and threat of identity theft; (2) loss of time and loss of productivity mitigating the risk and threat of identity theft; (3) the continued risk to their sensitive Private Information, which is subject to the risk of future breaches; (4) deprivation of value of their Private Information; and (5) loss of privacy. Compl. ¶ 26. The caselaw in this Circuit is clear on this issue—Plaintiffs must plausibly allege a "substantial risk" of future injury. *SuperValu I*, 870 F.3d at 770; *Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *4-5. *See also TransUnion LLC v. Ramirez*, 594 U.S. 413, 436-38 (2021) (mere risk of future harm is insufficient to confer standing). Plaintiffs have not met this burden.

Relying on the precedent set in *SuperValu I*, this Court in *Harris v. Mercy Health Network, Inc.* found the plaintiffs had not alleged a substantial risk of future injury based on potential future misuse of their private information. For example, in reviewing the same 2007 U.S. Government Accountability Office (GAO) report cited in *SuperValu I* (which, notably is also cited in the Complaint in the present case), the Court in *Harris* acknowledged "most [data] breaches have not resulted in detected incidents of identity theft[.]"

> The GAO Report was not isolated to data breaches involving lost credit or debit information; rather, it analyzed *all* types of data breaches, most of which, according to the Report, involved "compromised data that included personally identifiable information." GAO Report, p. 5. The GAO Report therefore speaks directly to the type of data breach at issue in the Consolidated Complaint. It follows that this Court must place just as much weight on the GAO Report as *In re SuperValu I* did; which is to say, the Court should conclude, in the absence of contrary information in the Consolidated Complaint, that most data breaches do not result in identity theft even when they involve personal identifiers like social security numbers. *See* GAO Report, pp. 24-25.

*Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *6.

Just as in *Harris*, Plaintiffs in this matter fail to provide any supporting facts about the *likelihood* of identity theft after a data breach but instead focus on the *scope* of potential damage when PII is acquired by cybercriminals. *See generally*, Compl. ¶¶ 66-94. As such the "continued risk to their sensitive Private Information" including alleged costs and loss of time/productivity to mitigate the "risk and imminent threat of identity theft" do not establish an injury in fact. Compl. ¶ 26.

Further, Plaintiffs cannot recover damages already incurred to "mitigate" a future risk that is not substantially likely to occur. *See SuperValu I*, 870 F.3d at 771 ("[P]laintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending[.]'") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

Finally, Plaintiffs' "deprivation of value" and "loss of privacy" injuries are likewise asserted only in conclusory fashion, with nothing more alleged than that Plaintiffs will somehow and at some time suffer these types of injuries. *See* Compl. ¶¶ 24, 26, 85e, 85h, 139, 149, 159, 194, 248. Without actually alleging facts supporting these types of injuries, Plaintiffs fall woefully short of meeting their burden. *See Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) ("On a motion to dismiss, [P]laintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing."). Plaintiffs' failure to allege an injury in fact requires the dismissal of the Complaint for lack of Article III standing.

### b. Plaintiffs Lack Standing to Pursue Injunctive Relief

Plaintiffs must "demonstrate standing… for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. at 431. For reasons very similar to those set forth above, Plaintiffs lack

standing to assert their equitable claims for declaratory and injunctive relief. While Plaintiffs claim

they "and Class Members will suffer irreparable injuries and lack an adequate remedy if a second

data breach occurs[,]" the Complaint falls severely short of plausibly alleging that a second data

breach against DRT is "imminent" to confer standing. Compl. ¶ 280. "To receive prospective

relief, a plaintiff must face an 'ongoing' or 'immediate injury.'" *Becker v. N. Dakota Univ. Sys.*,

112 F.4th 592, 595 (8th Cir. 2024). Indeed, "[i]f the likelihood of future injury from similar

circumstances is too speculative, then standing is lacking for prospective relief." *Weiher v.

Community Alliance, Inc. et al*, 8:25CV00020 (citing *Sessler v. City of Davenport, Iowa*, 102 F.4th

876, 884-85 (8th Cir. 2024)). Plaintiffs have alleged no injury for Article III standing and their

Complaint must be dismissed.

## II.     The Consolidated Class Action Complaint Fails to State a Claim

Even if Plaintiffs meet their initial burden and establish Article III standing, the Complaint

must still be dismissed in its entirety as it fails to state a claim upon which relief can be granted.

This is true because, to survive a motion to dismiss, Plaintiffs must "alleg[e] sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Kuhns v. Scottrade,

Inc.*, 868 F.3d 711, 717 (8th Cir. 2017). A claim meets the plausibility standard when its "factual

context … allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. As previously stated, this requires more than conclusory allegations. *See

SuperValu II*, 925 F.3d at 962-64. This is a pleading bar Plaintiffs simply do not clear.

### a.     Plaintiffs Do Not Allege Injuries or Damages to Support Their Claims

In addition to articulating an "injury in fact" to demonstrate standing, Plaintiffs must also

allege facts sufficient to support a legally cognizable injury supporting their claims, a standard that

"is generally higher than that" for standing. *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C.

2019). As set forth above, Plaintiffs have failed to plausibly allege injury or damages resulting from the Incident sufficient to establish standing, much less as required under each of their claims.

### b. The Complaint Fails to State a Claim for Negligence and Negligence *Per Se*

Plaintiffs' First and Second Causes of Action, asserting theories of "Negligence" and "Negligence *Per Se*" fail as a matter of law. "Under Iowa law, 'the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss.'" *Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 763 (N.D. Iowa 2024). The Court in *Mohsen v. Veridian Credit Union* rejected plaintiff's argument that "diminution in the value of his PII constitutes a non-economic property injury" rendering the economic loss rule inapplicable. 733 F. Supp. 3d at 764. Indeed, the Court held that any reduced value that may have resulted from the alleged theft of plaintiff's PII *is* "an economic loss, not physical damage to property." *Id.* at 765; *see also Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 502-06 (Iowa 2011) (economic loss rule barred negligence claims related to fraudulent credit card use).

All of Plaintiffs' alleged damages are bound by this rule. Many of Plaintiffs' alleged "damages" under their claims of negligence and negligence *per se* are indisputably economic. For example, Plaintiffs claim they have or will incur out-of-pocket expenses, lost opportunity costs and loss of productivity, future costs in terms of time, and effort spent, etc. These are clearly quantifiable and economic in nature. Compl. ¶¶ 194, 209. Further, Plaintiffs cannot recover damages related to "anxiety" and "emotional distress." *Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *15 ("the Iowa Supreme Court has generally 'refused to recognize an independent claim for emotional distress based on negligence without some physical harm.'") (quoting *Clark v. Est. of Rice ex rel. Rice*, 653 N.W.2d 166, 170 (Iowa 2002)). Plaintiffs' remaining theories of damages fit squarely into the "diminution in value" category of damages, which cannot be used to

circumvent the economic loss rule. As such, Plaintiffs' claims of negligence and negligence *per se* must be dismissed.

### c.  The Complaint's Breach of Third-Party Beneficiary Contract Claim Fails

Plaintiffs' third-party beneficiary claim has no plausible facts to support it. "The primary question in a third-party beneficiary case is 'whether the contract manifests an intent to benefit a third party.'" *RPC Liquidation v. Iowa Dept. of Transp.*, 717 N.W.2d 317, 319-20 (Iowa 2006). Plaintiffs allege, in part:

> 219.    Upon information and belief, DRT's contracts with its clients [such as 10 Roads] each contained a provision requiring DRT to implement and maintain reasonable security procedures and practices appropriate to the nature of Private Information DRT collected, to protect the Private Information from unauthorized access, use, or disclosure.
>
> 220.    These contracts between DRT and its clients were made expressly for the benefit of Plaintiffs and Class Members as the intended third-party beneficiaries of these contracts.

Compl. ¶¶ 219-20.

What is perhaps most striking about Plaintiffs' allegations is that they fail to attach or even allege they have *seen* the contract(s) between Defendants they claim were made expressly for Plaintiffs' benefit. Plaintiffs cannot assert a claim for breach of a third-party beneficiary contract without *any* nonconclusory showing that Plaintiffs were intended to benefit from a contract between Defendants. As such, this claim fails as a matter of law.

### d.  The Complaint Fails to State a Claim for Unjust Enrichment

Plaintiffs' unjust enrichment claim should be dismissed, as such claims in the data breach context have been routinely rejected by the district courts and the Eighth Circuit. For example, in *Hall v. Centerspace, LP*, No. 22-CV-2028 (KMM/DJF), 2023 WL 3435100 (D. Minn. May 12, 2023), the Court dismissed plaintiff's unjust enrichment claim because he did "not identify a benefit plausibly conferred upon [defendant] through the provision of PII." *Id.* at *6. The "benefit"

of the PII and plaintiff's employment services was insufficient to assert an unjust enrichment claim. *Id*.

The Eighth Circuit has rejected unjust enrichment claims in similar data breach contexts. *SuperValu II*, 925 F.3d at 966 (Plaintiff paid for groceries not "for a side order of data security and protection."); *Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) (No allegation that any specific portion of "subscriber fee" went toward data protection—no allegation of benefit conferred in exchange for PII). *See also*, *Harris v. Mercy Health Network, Inc.*, No., 2024 WL 5055556, at *12 (failure to allege a "specific portion" of payment to defendant funded data protection was fatal to unjust enrichment claim).

In this case, Plaintiffs' unjust enrichment claims rest on even shakier ground than the weight of authority above, as the *only* "benefit" Plaintiffs allege was conferred on Defendants is their PII because, without it, "Defendants would not be able to provide services and would be unable to obtain revenue." Compl. ¶ 227. The "benefit" of receiving PII has been repeatedly rejected by the Eighth Circuit as a basis to assert an unjust enrichment claim and, as such, Plaintiffs' claim cannot survive.

### e. Plaintiffs' Negligent Selection, Hiring, Retention, and Supervision Claim Fails

Plaintiffs' allegations on this front fall far short of stating a plausible claim for relief. "A claim of negligent hiring, retention, or supervision requires proof of (1) the employer's negligence in hiring, retaining, or supervising the unfit employee and (2) negligence or other tortious misconduct by the employee." *Randolph v. Aidan, LLC*, 6 N.W.3d 304, 309 (Iowa 2024). As such, Plaintiffs, at a minimum, must establish *both* that 10 Roads was negligent in its selection, hiring, retention, or supervision of DRT *and* that DRT was negligent in its conduct related to the Incident. *Id*. The Complaint fails to plausibly allege either. Moreover, this claim can easily be set aside

because, as set forth above, Plaintiffs have failed to plausibly allege a claim for negligence against DRT. As such, because Plaintiffs cannot show negligence by DRT related to its data security measures, this claim fails.

####    f.    The Complaint Fails to State a Claim for Breach of Implied Contract

Plaintiffs' allegations do not plausibly state a claim for breach of an implied contract. An implied contract exists "if the parties conduct—as opposed to words—demonstrate a 'mutual manifestation of assent…to the same terms.'" *Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *10 (citing *Larew v. Hope L. Firm, P.L.C.*, 977 N.W.2d 47, 56 (Iowa 2022)). "Mutual assent is ordinarily manifested through offer and acceptance, within our contract principles." *Id.* (quoting *Rucker v. Taylor*, 828 N.W.2d 595, 602 (Iowa 2013).

First, the Complaint is glaringly absent of any allegations that establish "mutual assent" or a "meeting of the minds" between Plaintiffs and Defendants. In prototypical conclusory fashion, Plaintiffs assert "Defendants required Plaintiffs and Class Members to provide and entrust their Private Information to Defendants as a condition of obtaining services, benefits, and/or employment." Compl. ¶ 252. In exchange, according to Plaintiffs, Defendants agreed "to safeguard and protect such Private Information[.]" Compl. ¶ 253. Other courts have found such allegations insufficient to establish an implied contract. *See, e.g.*, *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (plaintiff "transacted to receive healthcare services from the Defendants—not data security services beyond the privacy requirements already imposed…by federal law.").

Plaintiffs shortcomings extend further. Applying Eighth Circuit precedent found in *Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) and *Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016), this Court in *Harris* dismissed the plaintiff's claim for breach of an implied contract:

16

> Read together, *Kuhns* and *Carlson* [sic] require alleged victims of a data breach to do two things to successfully bring a breach of implied contract claim. First, the plaintiffs must allege that the defendant promised to protect the *specific* piece of data the plaintiffs assert was accessed. *Carlsen*, 833 F.3d at 911 (rejecting claim where privacy policy "unambiguously d[id] not include" the pieces of breached information, meaning it was "not among the protections for which [plaintiff] bargained"). Second, even if the implied contract covers the specific data, the plaintiff must allege something beyond a mere implicit promise to protect it from unauthorized use or comply with data security laws. *Kuhns*, 868 F.3d at 717. In other words, plaintiff must identify the actions (e.g., security measures or procedures) the defendant could have employed to prevent the breach. *Id.*

*Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *11.

The present case fits squarely within the pleading shortfalls addressed in *Harris*, *Kuhns*, and *Carlsen*. Plaintiffs have not alleged that Defendants promised to protect the specific PII that may have been exposed during the Incident and certainly have not alleged specific conduct by Defendants that constitutes the alleged breach. Instead, Plaintiffs generally allege "Defendants promised and were obligated to protect Plaintiffs' and Class Members' Private Information" and that Defendants breached the implied contract "due to (i) DRT's inadequate data security measures and procedures; and (ii) 10 Roads's failure to ensure its vendors and/or independent contractors—such as DRT—had adequate data security measures and procedures in place." Compl. ¶¶ 256, 265. These allegations are just like the generalized "duty" the courts rejected in *Harris*, *Kuhns*, and *Carlsen.* Plaintiffs' breach of implied contract claim must be dismissed.

## III.    Watts and Moore are Subject to Arbitration Agreements and Class Waivers

In the unlikely event this Court finds one or more Plaintiffs can establish Article III standing and if it rules that one or more of their claims can survive Defendants' Rule 12(b)(6) motion to dismiss, this Court should enforce the contractual agreements between Defendants and Plaintiffs Watts and Moore.

"In deciding a motion to compel, the Court 'determine[s] only whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope

of that agreement.'" *Brondyke v. Bridgepoint Educ., Inc.*, 985 F. Supp. 2d 1079, 1089 (S.D. Iowa 2013) (quoting *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 822 (8th Cir. 2003)).

### a. Watts and Moore Are Precluded from Serving as Class Representatives Due to Enforceable Arbitration Agreements and Class Action Waivers

Watts and Moore are former employees of Defendant 10 Roads. Compl. ¶¶ 5, 130, 151. In consideration of that employment, they both entered into a separate "Arbitration Agreement" with 10 Roads (collectively, the "Agreements"). Ex. A, Watts Arbitration Agreement; Ex. B, Moore Arbitration Agreement. The Agreements apply to 10 Roads as well as its "direct, or indirect, subsidiaries, affiliates, and parent companies, together with all benefit plans of Company and the sponsors, fiduciaries and administrators of such benefit plans." Exs. A, B, § 1.2 (defined therein as the "Company"). DRT is both an affiliate of 10 Roads and one of the "sponsors, fiduciaries and administrators" of its benefit plans. Compl. ¶¶ 2-5. The Agreements "appl[y] to all disputes between Company and me, all claims Company may have against me, and all claims I may have against Company, or any of its officers, directors, employees, or agents, arising out of my employment with Company" including, but not limited to, "[c]laims for breach of express or implied contract or covenant; breach of fiduciary duty; misappropriation of trade secrets; Claims for the commission of any intentional or negligent tort; Claims for any violation of any federal, state or local law, ordinance, regulation or rule[.]" Exs. A, B, § 2.1.

Section 3 of the Agreements provide a clear class action waiver:

> The parties agree that, except where prohibited by federal or state law, all Claims subject to this Agreement must be pursued on an individual basis only. By entering this Agreement, the parties waive their right to commence, or be a party to, any class, collective, representative, or private attorney general action, or to bring any Claim jointly or collectively, and the arbitrator has no authority to proceed with arbitration on such basis.

Exs. A, B, § 3.

In addition, Section 7 provides a clear and binding arbitration agreement:

Claims must be resolved through final and binding arbitration conducted with the American Arbitration Association ("AAA") at an AAA facility, within a reasonable distance of the Company office nearest my home or where the injury giving rise to the Claim(s) occurred. [. . .]

Ex. A, § 7[1].

Section 15 of the Watts Agreement provides,

**Governing Law.** This Agreement shall be governed by, construed, and enforced pursuant to the procedural and substantive provisions of the laws of the State of New York, specifically Article 75 of the New York Civil Practice Law and Rules, and not the Federal Arbitration Act, 9 U.S.C. § et seq (the "FAA"). . . . In the event such court finds that this Agreement is not governed by the laws of the State of New York, this Agreement shall be governed by, construed, and enforced pursuant to the procedural and substantive provisions of the laws of the State in which the court sits, and not the FAA.

Ex. A, § 15.

Notably, parties are free to include a choice-of-law provision applying state laws governing arbitration, so long as that intent is made "abundantly clear." *See, e.g.*, *UHC Mgmt. Co., Inc. v. Computer Scis. Corp.*, 148 F.3d 992 (8th Cir. 1998) ("[W]e will not interpret an arbitration agreement as precluding the application of the FAA *unless the parties' intent…is abundantly clear.*") (emphasis added). As such, New York law applies to the enforceability of the terms of the Watts Agreement. The courts in New York have routinely upheld class action waivers as enforceable. *See, e.g.*, *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 246 (S.D.N.Y. 2022) ("[C]ourts applying New York law … have uniformly held that class action waivers are not unconscionable."); *Nayal v. HIP Network Svcs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y 2009) (same); and *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448, 449 (2003) (same). Arbitration agreements are likewise enforceable under New York law. N.Y. C.P.L.R. § 7501 (McKinney) ("A written agreement to submit any controversy thereafter

---

[1] The Watts and Moore Agreements contain slightly different terms related to the appropriate location of arbitration but are otherwise identical.

arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy…").

Section 15 of the Moore Agreement provides,

> **Governing Law.** This Agreement shall be governed by, construed, and enforced pursuant to the procedural and substantive provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and not individual state laws regarding enforcement of arbitration agreements or otherwise. In the event either of the parties bring an action in a court to compel arbitration under this Agreement, or to otherwise challenge any provision of this Agreement, such actions shall be brought only in state court, in the court location nearest my work reporting location, pursuant to the jurisdiction and venue provisions of Section 4 herein.

Ex. B, § 15.

Moore's contractual agreement to waive any class action and to arbitrate must be enforced.[2] As such, under the Moore Agreement, the state law "nearest [Moore's] work reporting location" should apply—meaning Indiana law controls. *See* Compl. ¶ 30; Ex. B, §§ 4,15. Indiana law clearly enforces arbitration agreements:

> (a) A written agreement to submit to arbitration is valid, and enforceable, an existing controversy or a controversy thereafter arising is valid and enforceable, except upon such grounds as exist at law or in equity for the revocation of any contract. . . . This chapter also applies to arbitration agreement between employers and employees or between their respective representatives (unless otherwise provided in the agreement).

Ind. Code § 34-57-2-1.

While it does not appear the Indiana state courts have expressly addressed the enforceability of class action waivers under state law, "Indiana recognizes a strong policy interest in favor of enforcing arbitration agreements." *Land v. IU Credit Union*, 218 N.E.3d 1282, 1286

---

[2] Without waiving any argument that the FAA is applicable to the Moore Agreement, it is Defendants' position that both the class action waiver and arbitration agreement are enforceable under applicable state law even if the FAA does not apply. *See, e.g.*, *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 343-44 (D. Mass. 2019), *aff'd*, 966 F.3d 10 (1st Cir. 2020) ("Section 1 [of the FAA] does not, however, in any way address the enforceability of employment contracts exempt from the FAA. It simply excludes these contracts from FAA coverage entirely." *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 529 (S.D.N.Y. 2003). Accordingly, "[w]hen a contract with an arbitration provision falls beyond the reach of the FAA, courts look to state law [to] decide whether arbitration should be compelled nonetheless." *Breazeale v. Victim Servs., Inc.*, 198 F.Supp.3d 1070, 1079 (N.D. Cal. 2016)).

(Ind. 2023), *aff'd on reh'g*, 226 N.E.3d 194 (Ind. 2024). Given this policy in favor of arbitration, and the guiding principle that similar agreements will be enforced under ordinary contract principles, it is almost certain the Indiana Supreme Court would generally uphold class action waivers. *See Herrington v. Waterstone Mortgage Corp.*, 907 F.3d 502, 506 (7th Cir. 2018) ("*Epic Systems* makes clear that a waiver of the right to proceed in a class or collective arbitration is valid.") (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018)).

Because Watts and Moore are subject to clear and enforceable class action waivers and arbitration agreements governing the claims within the Complaint, they are precluded from serving as class representatives and, at a minimum, should be compelled to participate in arbitration.

## IV.    Individualized Issues of Fact and Law Preclude Class Certification.

After reviewing the Complaint, and the arguments set forth herein, it is clear that the putative class faces individualized issues of fact and law such that Plaintiffs fail to plausibly allege a class. For example, even amongst the three named plaintiffs, there are individualized issues related to the presence and enforceability of arbitration agreements and/or class action waivers. Further, there are inevitable questions of law and fact related to, for example, (1) whether the class members' PII was accessed and/or acquired; (2) the ability to establish standing for the claims asserted; and (3) the existence and amount of alleged damages sustained by class members. In the event this Court declines to address the issue of class certification presently, Defendants reserve the right to assert additional argument in response to Plaintiffs' Motion for Class Certification.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should dismiss the Complaint with prejudice. In the alternative, and only if it deems dismissal inappropriate, the Court should find that Plaintiffs have failed to plausibly allege a class and compel arbitration as to Plaintiffs Watts and Moore.

Dated this 17th day of November, 2025.

DRT LLC and 10 ROADS EXPRESS, LLC,
Defendants,

By: /s/ *Kenneth W. Hartman*
Allison D. Balus (AT0010832)
Kenneth W. Hartman (AT0010409)
Adam J. Kost (AT0014567)
of     BAIRD HOLM LLP
1700 Farnam St. Ste. 1500
Omaha, NE  68102-2068
Phone: 402-344-0500
Email:  abalus@bairdholm.com
Email:  khartman@bairdholm.com
Email:  akost@bairdholm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of November, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

J. Barton Goplerud – goplerud@sagwlaw.com
Brian O. Marty – marty@sagwlaw.com
Leanna A. Loginov – lloginov@shamisgentile.com
William B. Federman – wbf@federmanlaw.com
Leigh S. Montgomery – lmontgomery@eksm.com
Jessica A. Wilkes – jaw@federmanlaw.com

 /s/ *Kenneth W. Hartman*